THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRANK E. TAYLOR, PLAINTIFF IN ERROR.

Argued February 20, 1918—Decided August 21, 1918.

1. On the trial of an indictment for conspiracy to cheat and defraud, testimony tending to prove other acts of the defendants, in pursuance of an unlawful agreement, with persons other than those mentioned in the indictment, but which acts were similar in character and occurred during the same period of time, is properly admissible in evidence for the purpose of proving the fraudulent purpose and intent of the persons involved, when such testimony is followed or accompanied by proof of one or more of the overt acts charged in the indictment.

2. A party is in no position to complain of matters which the judge omitted to charge the jury, unless the judge's attention was directed thereto by a request and such request was refused.

3. On the trial of an indictment for conspiracy to cheat and defraud, it is a proper procedure for the state to prove the character of the unlawful means adopted by the defendants to carry into effect the conspiracy charged in the indictment, even though those particular unlawful means are not set forth in the indictment, and in themselves constitute an indictable offence, so long as they are related to the subject-matter of the indictment.

4. Only the general reputation of a defendant can properly be put in evidence and particular facts and circumstances tending to establish honest dealings or conduct are inadmissible.

5. A court cannot legally substitute its judgment for that of the jury and exclude testimony from the latter's consideration, upon the theory that its evidential value is weak, without depriving a defendant of a constitutional right to the benefit of such testimony, and a jury of one of its most sacred functions—to weigh the testimony and make deductions therefrom.

6. On the trial of an indictment for conspiracy to cheat and defraud, testimony showing that an alleged conspirator, who had turned state's evidence and upon whose testimony the state relied for conviction, was addicted to the excessive use of liquor to such an extent that he would be incapacitated for weeks at a time, during which he was mentally incompetent and incoherent, and that those facts were known to the defendant, is admissible for the purpose of having the jury pass upon the probability of a man allying himself with a man whose drunkenness might, at any moment, have made him indiscreet and thereby liable to disclose the fraud that was being perpetrated.

On error to the Essex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justice KALISCH.

For the plaintiff in error, *Wilbur A. Heisley.*

For the state, *J. Henry Harrison,* prosecutor of the pleas.

The opinion of the court was delivered by

KALISCH, J.   The record in this case discloses a conviction and judgment thereon of the plaintiff in error, indicted jointly with one James F. Cowan, of a criminal conspiracy to cheat and defraud the board of chosen freeholders of the county of Essex, of its moneys, goods, chattels and property. Cowan pleaded *non vult* to the indictment, was called as a witness for the state, and gave testimony tending to establish the commission of the offence, by the defendants, as charged against them in the indictment.   The indictment contains but a single count, which charges that the defendants named therein did wickedly, corruptly, knowingly and unlawfully conspire, combine, confederate and agree together fraudulently and falsely to cheat and defraud the board of chosen freeholders of the county of Essex, of divers large sums of money, to wit, &c.   Here follow charges of the various fraudulent and · unlawful means alleged to have been used by the defendants, and of the several overt acts committed by them to accomplish and to carry into effect the unlawful agreement. Five overt acts are laid in the indictment, in each of which is set forth the name of the person with whom the defendants acted and through whom the defendants were enabled and succeeded in obtaining money unlawfully from the board of chosen freeholders.

The record is a voluminous one containing forty assignments of errors, and thirteen specifications of causes for reversal.   We propose to deal only with those which have been argued orally before us and those relied on in the brief of counsel of plaintiff in error.

The first fifteen assignments of errors and all of the specification of causes for reversal deal with the admission in evidence of acts not charged as "overt acts" in the indictment,

and the rulings of the trial judge regarding the competency of such acts in evidence.

The precise point made by counsel of plaintiff in error, relating to this group of alleged errors is, that the trial judge, against the objection made, by counsel, permitted the state to prove acts of eleven individuals who were not named in the indictment, but whose acts were similar to the "overt acts" mentioned therein, and treated the same as "overt acts" upon which the plaintiff in error could be lawfully convicted, regardless of whether the state proved or did not prove any of the specified overt acts. This assertion is not supported by the record. It does appear that counsel of defendant objected to the introduction of testimony tending to prove other acts of the defendants, in pursuance of the unlawful agreement, with persons other than those mentioned in the indictment, but which acts were similar in character and occurred during the same period of time, whereupon counsel of the state said to the court that he intended to follow it up and connect these acts with those set forth in the indictment, thereupon and upon condition that proof would be made of one or more of the overt acts charged in the indictment, the court admitted the testimony. Proof was subsequently made of the overt acts laid in the indictment. Counsel of plaintiff in error, in his brief, does not seriously contend that the testimony was inadmissible for all purposes, but frankly admits, that it was admissible "for the purpose of proving the fraudulent purpose and intent of the persons involved." But he argues that the trial judge having admitted such testimony it became his legal duty "to have expressly told the jury that the evidence of other acts should be considered by them only and solely for the purpose of determining whether Cowan and Taylor were corruptly and fraudulently inclined, as charged, and should have distinctly told the jury that they should not consider such acts as or in lieu of the stated overt acts in the indictment, and that even if the jurors believed that these other acts were committed, but if they had any reasonable doubt as to every one of the overt acts mentioned in the indictment, the defendant should be acquitted." No request was

made of the trial judge, by counsel of defendant, to instruct the jury to the effect as above suggested, and, therefore, the trial judge was under no legal duty to do so. Counsel of defendant is in no position to complain of matters which the judge omitted to charge the jury, unless the judge's attention was directed thereto by a request and such request was refused. Besides all this, however, it appears that the judge, in express terms, instructed the jury that "a mere conspiracy of the kind stated in this indictment is insufficient to constitute a crime unless some overt act charged in the indictment is committed." This was an accurate statement of the law.

It further appears that counsel of defendant moved to strike out the testimony of the witness Bender, upon the ground of irrelevancy, and in that it tended to prove a distinct offence unrelated to the offence charged in the indictment. The trial judge apparently ignored the application for he made no ruling whatever. Construing the failure of the court to make a ruling equivalent to a denial of the motion (which is not to be considered as a precedent), we have considered the point raised, and upon examination of the testimony objected to conclude therefrom that the motion to strike out was without any merit. The testimony was relevant on the question of the motive and intent which actuated the defendants, and besides it was a proper procedure for the state to prove the character of the unlawful means adopted by the defendants to carry into effect the conspiracy charged on the indictment, even though those particular unlawful means were not set forth in the indictment, and in themselves constituted an indictable offence, and so long as they were related to the subject-matter of the indictment. The matters argued, under assignments 16, 17, 18, 19 and 20, we find, are without merit. The twenty-first assignment of error is founded upon the refusal of the trial judge to permit Harry V. Osborne, a witness produced by the defendant, to answer the following question: "And haven't you, and hasn't Mr. Taylor, put in considerable time during the last three or four months in evolving a scheme for the drawing of jurors which would practically eliminate—or at least very much limit the

chances for a fraud of this kind which is embodied in this charge being perpetrated upon the county?"

This question was properly excluded. It could only have a bearing upon the defendant's character for honesty. It is to be borne in mind, however, that it is firmly settled law that it is only the general reputation of a defendant which can, properly, be put by him in evidence. Particular facts and circumstances tending to establish honest dealings or conduct are inadmissible.

Assignments 22, 23, 24 and 25 relate to the exclusion, by the court, of questions asked of the defendant by his counsel, which sought to establish by this witness that Cowan was addicted to the excessive use of liquor, and to such an extent that he would be incapacitated for weeks at a time, during which he was mentally incompetent and incoherent, and that these facts were known to the defendant, before and at the time it is alleged that he entered into a conspiracy with Cowan to defraud the county. The purpose of offering this testimony, as stated to the trial court, by defendant's counsel, was to have the jury pass upon the question, as a matter of fact, "Whether or not it is probable that a man in his right senses would make such a combination with a man whom he knows to be for weeks at a time out of his head by the use of intoxicating liquors."

We think the testimony offered was competent, and that its exclusion was error prejudicial to the defendant. It may very well be that the probative force of such testimony is very slight. But that is not a proper matter for a court to deal with. The court cannot legally substitute its judgment for that of the jury and exclude from the latter's consideration testimony, upon the theory that its evidential value is weak, without depriving a defendant of a constitutional right to the benefit of such testimony, and a jury of one of its most sacred functions—to weigh testimony and make deductions therefrom. If the testimony was competent its potentiality was for the jury to determine. In the case *sub judice,* there is no ground stated, by the trial judge, why he ruled the questions out.

The nature of the case was such that the state was obliged to resort to the testimony of Cowan, an alleged co-conspirator, and to proof of conduct between the defendants, in order to establish the unlawful agreement. Cowan testified as to the criminal compact that existed between him and Taylor to defraud the county. If it be true that Taylor knew Cowan to be an irresponsible drunkard and given to other vices, the question might naturally arise, would Taylor, who, according to the testimony, bore an excellent reputation for honesty and who held an office of trust for many years, without stain, ally himself with a man whose drunkenness might, at any moment, have made him indiscreet and thereby disclose the fraud that was being perpetrated. Now, in order, for the defendant to have the benefit of the jury's consideration of that important question, it was incumbent upon the defendant to establish, first, as a fact, that Cowan's habits were what the questions put to the defendant aimed to prove, and that the latter knew of such habits before and at the time when the alleged conspiracy was formed. This the court, erroneously, refused to permit the defendant to do, and, therefore, the judgment must be reversed. We are not unmindful that it might be fairly argued that men do not seek among the virtuous and honorable for accomplices to commit unlawful deeds, but even so that circumstance can only affect the evidential value of the testimony offered and not its competency, as we have already pointed out.

We have examined the questions raised by the remaining assignments of errors and find them unmeritorious.

The judgment is reversed.